299 So.2d 458 (1974)
Loy Faye Lewis LITTON, Plaintiff-Appellant,
v.
Alton Lee LITTON, Defendant-Appellee.
No. 12331.
Court of Appeal of Louisiana, Second Circuit.
July 1, 1974.
Rehearing Denied September 4, 1974.
*460 Glen H. Smith, Shreveport, for plaintiff-appellant.
Colvin, Hunter & Brown by D. Scott Brown, Mansfield, for defendant-appellee.
Before AYRES, HALL and WILLIAMS, JJ.
Rehearing en Banc. Denied September 4, 1974.
HALL, Judge.
The primary issues raised by this appeal relate to child support and visitation rights.
On April 26, 1973, a judgment of divorce was rendered dissolving the marriage of Loy Faye Lewis Litton and Alton Lee Litton. Mrs. Litton was granted the permanent care, custody and control of the minor children of the marriage, Lisa Faye, age thirteen, and Heather Lorraine, age four, subject to the visitation rights of Mr. Litton at reasonable times, places and hours. Mr. Litton was ordered to pay $300 per month for the support of the two minor children.
On September 24, 1973, Mrs. Litton filed a petition pursuant to which a rule issued directing Mr. Litton to show cause why there should not be judgment rendered against him for $1,200 past due child support and for any other payments that might become due before the rule was heard; why he should not be decreed to be guilty of contempt of court for failure to pay the installments of support as they came due; why he should not be instructed to pay the installments of child support timely; and why child support payments should not be increased to $600. Mr. Litton filed a rule against Mrs. Litton to show cause why she should not be held in contempt of court for refusing to allow Mr. Litton reasonable visitation rights of the two minor children; why the court should not fix the visitation rights of Mr. Litton allowing him to have the children every other weekend, beginning Friday at 5:00 p.m. and ending Sunday at 6:00 p.m., on Christmas and Thanksgiving of every other year and one-half of the summer vacation from school; and why there should not be a reduction of child support payments from $300 per month to $200 per month.
The rules were consolidated for trial and judgment was rendered ordering Mr. Litton to pay Mrs. Litton $1,200 for past due child support; ordering Mr. Litton to continue to pay Mrs. Litton $300 per month for child support on the tenth day of each month; ordering that Mrs. Litton continue to enjoy the permanent care, custody and control of the minor children; and granting Mr. Litton reasonable visitation privileges with the right to have the minor children with him on the first and third week-ends *461 of each month, beginning the first weekend in November, 1973, from 5:00 p. m. on Friday until 5:00 p.m. on Sunday, the first four weeks of the summer vacation from school, and on Christmas of every other year commencing with Christmas of 1974.
Mrs. Litton appeals from the judgment on the consolidated rules. She contends the trial court erred in: (1) failing to order Mr. Litton to make child support payments timely; (2) failing to find Mr. Litton in contempt of court for failure to pay child support as ordered; (3) awarding $1,200 instead of $1,500 for past due child support; (4) not increasing the child support payments from $300 to $600 per month; (5) granting Mr. Litton extensive and liberal visitation rights constituting divided custody of the children; (6) assessing one-half of the costs of the proceedings in the trial court to Mrs. Litton.
This court will discuss each specification of error in the order listed above. Although the case was vigorously tried on behalf of each litigant in the district court, our appellate duty to review the facts and law is made more difficult because no argument or brief has been presented on behalf of appellee, depriving this court of the benefit of a truly adversary presentation under which our system of justice and decision-making functions best.
The trial court's failure to order Mr. Litton to pay child support payments timely was not error. The order to make child support payments on a certain day of the month is an order to pay timely. Any additional language would be surplusage.
The failure of the trial court to hold Mr. Litton in contempt of court for his failure to pay child support as previously ordered does not constitute error. The trial court is vested with great discretion in determining whether or not a party should be held in contempt of court for failing to follow the orders of the court and we conclude the trial court did not abuse its discretion in failing to hold Mr. Litton in contempt. These parties have been before the court since October, 1971, and the trial court is in the best position to know how to deal with the litigants in order to effectuate the orders of the court.
In her petition, Mrs. Litton prays that $1,200 child support be decreed to be past due and unpaid through the installment due September 10, 1973, together with any other payments that become due and unpaid subsequent to the filing of the rule. The petition prays not only for the $1,200 due as of the date the petition was filed but also for any child support payments due at the time of the trial of the rules, which was October 29, 1973. Mr. Litton paid the $300 payment for child support due May 10, 1973, and thereafter made no more child support payments. Five payments were due and unpaid at the time of trial. The trial court erred in not awarding the full $1,500 due for unpaid child support at the time of the trial of the rules. This portion of the judgment will be amended accordingly.
Mrs. Litton seeks an increase in the amount of child support for the two minor children from $300 to $600 per month, the amount she contends is needed to maintain the two minor children. She alleges Mr. Litton's income has increased and the childrens' needs have increased since the original judgment was rendered.
The law is well settled that it is the obligation of both the mother and father to support, maintain and educate their children. LSA-C.C. Arts. 227 and 230. In determining the amount of child support to be awarded, the court must take into consideration the needs of the children and the circumstances of those who are obligated to pay the support. LSA-C.C. Art. 231.
Mrs. Litton is an invalid due to multiple sclerosis and has not walked since 1966. She and her two children live in Mansfield at the home of Mrs. Litton's mother, who generously provides a nice place to live *462 and her time and efforts in caring for the family. Mrs. Litton's only income is a disability social security benefit of about $192 per month and about $93 per month income from her savings account and savings certificates, representing money remaining from that received by her in the community property settlement. It is evident that Mrs. Litton cannot contribute in money to the support of the children.
The two children receive about $183 per month in social security benefits. This amount is to be considered in determining their needs. Evidence was offered in the form of a detailed list of expenses verified by the grandmother showing monthly expenses of $792.33 for the two children. Careful scrutiny of the itemized expenses indicates that while the amount shown could and probably is being spent on the children, the direct expense of reasonably providing for the children under the circumstances is somewhat less.
Mr. Litton operates a farm in Evelyn, Louisiana, and is principally engaged in raising and selling cattle. He also operates a rodeo arena, has worked at a livestock auction company, has hauled and worked cattle for others and has engaged in other farm related activities. As indicated by the record, the expenses incurred in Mr. Litton's income-producing activities are substantial and his income from these activities is primarily seasonal.
His gross income from January 1 to September 30, 1973, was $90,437.66, with little expectation for any additional income for the year due to the seasonal nature of his business. Evidence was offered showing expenses during the five month period from May through September, 1973, excluding repayments of loans, of $29,201.75, or a monthly average of $5,840.35. Mr. Litton estimated his monthly business expenses, not including depreciation, replacement of equipment and capital items, or repayment of loans, at $4,323.
In the latter part of 1972 or the first part of 1973, Mr. Litton established a line of credit with The First National Bank of Shreveport and borrowed $75,000, a substantial part of which was used to settle with Mrs. Litton and to pay existing indebtedness owed at the time of the settlement. As of November 29, 1972, he had paid the loan down to $32,281.16. Thereafter, the Bank advanced him an additional $58,500. As of the date of trial in October, 1973, the balance owed was $37,197.71, indicating payments on the loan during 1973 of $53,583.45. It was estimated that Mr. Litton will have to borrow an additional $40,000 during the fall of 1973 and spring of 1974 to continue operations. Substantially all of the proceeds of cattle sales are applied to the indebtedness and the Bank loans him additional money at any time he needs operating funds. The loans are secured by mortgages on Mr. Litton's real estate, farm equipment and machinery, and cattle.
Mr. Litton's method of operation and the incomplete data in evidence make it very difficult to evaluate his actual net income or profit and, in turn, the extent of his ability to provide for his children. The record makes it clear that he is hard working and industrious and has the capacity to generate substantial income. The record also reveals, however, that his expenses are substantial and, with the heavy indebtedness he is carrying, he does not bring a great deal to net. The record also shows that Mr. Litton and his new family, a wife and her four children, live relatively frugally and that his bank balance at any given time is not great.
As pointed out above in connection with another issue, the trial judge has lived with this litigation over a period of several years. While the evidence indicates to us that Mr. Litton may be approaching a point in his business activities where the extent of his ability to provide for his children may be substantially increased, such change was not proven to have yet taken place. According great weight to the trial judge's discretion in matters of this nature, we find no abuse of that discretion in his decision to continue child support payments at $300 per month. This amount, together with the $183 social *463 security payments to the children, should enable Mrs. Litton to handle the direct expenses of providing comfortably for the children under present circumstances, considering their needs and the father's ability to pay as reflected by the evidence.
The next issue for consideration is whether the visitation rights of Mr. Litton as fixed by the trial court constitute divided custody or authority. The court in Ogden v. Ogden, 220 So.2d 241 (La.App. 1st Cir. 1969) stated the following relevant rules in regard to custody:
"It is settled law that in the event of divorce or separation of parents with the consequent awarding of custody of children of the marriage to one parent, the other parent has the right of access to the children. This privilege of access is subject to such reasonable restrictions as the circumstances warrant within the discretion of the court. Said privilege may not be denied unless the parent has forfeited same by his conduct or the exercise thereof be injurious to the children's welfare. Johnson v. Johnson, 214 La. 912, 39 So.2d 340.
"Equally well established is the rule that in cases of this nature the paramount issue is the welfare of the children concerned, which consideration dictates that the control of the spouse granted custody be an undivided authority. Consequently visitation privileges accorded the spouse not having custody should never be so extensive or liberal as to constitute a divided authority or shared control of the children concerned.
"As aptly observed by the Supreme Court in Newson v. Newson, 176 La. 694, 146 So. 472, custody should be given to one spouse, not alternatively to each inasmuch as the latter situation is not conducive to a child's welfare but rather is likely to prove injurious to a child's future well being.
"In resolving issues of this nature much discretion and latitude is accorded the trial court whose judgment is entitled to great weight and will not be set aside unless it amounts to an abuse of its discretion under the circumstances of each particular case. Johnson v. Johnson, supra."
The trial court in the instant case granted Mr. Litton the right to have the two minor children in his custody approximately seventy-seven days out of the year. Mr. Litton remarried after his divorce from Mrs. Litton and his new wife has four children living at home. Lisa Litton, the thirteen year old daughter, testified she did not want to visit her father at his home in Evelyn because of his new wife and her children and she would rather her father come to her home in Mansfield to visit her there. It is evident that Mr. Litton's remarriage has been emotionally upsetting for Lisa. Lisa further stated she is the one that usually looks after Heather when they visit their father in Evelyn. The children love their father and they are properly cared for during their visits to Mr. Litton, who loves them and, naturally, wants them with him as much as possible.
Taking all factors into consideration, particularly the welfare of the children, we conclude the trial court abused its discretion in awarding Mr. Litton the custody of his children for approximately seventy-seven days out of the year. Mrs. Litton has legal custody and correspondingly, the primary responsibility for the raising of the children. Her authority and control should not be limited and divided to the extent provided in the judgment appealed from. While it may be in the children's best interest to spend considerable time with their father, it is not in their best interest to attempt to judicially spell out visitation rights to the extent provided in the judgment below. Obviously, the trial judge recognized a need to specify some particular times in view of the parties' inability to agree and we accord weight to his discretion, but are compelled to reduce the specified visitation periods. The judgment will be amended to limit the specifically designated visitation rights to one weekend out of every month, Christmas of every other year and two weeks during the summer vacation from school. See Cook v. Wingo, *464 281 So.2d 867 (La.App. 3d Cir. 1973), writ refused, 284 So.2d 336 (La.1973).
It is our opinion the trial judge erred in assessing one-half of the costs of the proceedings in the lower court to Mrs. Litton. The proceeding was provoked primarily because of Mr. Litton's failure to pay child support as previously ordered by the court. He is in a better position to bear the expense of this litigation and should do so.
For the reasons assigned, the judgment of the district court is amended to increase the amount of the judgment for past due child support to $1,500; to allow Mr. Litton visitation rights at reasonable times and places, including specifically but not limited to having the children with him the second weekend of each month from 5:00 p.m. on Friday to 5:00 p.m. on Sunday, the first two weeks of the summer vacation from school, and on Christmas of every other year commencing with Christmas of 1974; and to assess all costs of this proceeding, including the cost of appeal, to Mr. Litton. As amended, the judgment is affirmed.
Amended, and as amended, affirmed.