Judge Terrel J. Broussard,
Pro Tempore
hln this custody dispute, appellant/defendant, Jesse Kaptein, appeals a trial court’s decision that awarded sole custody of C.E.K.[1] to appellee/plaintiff, Heather Kaptein, continued the suspension of Face-Time visitation, and determined that reasonable visitation with him was not in the best interest of the child. For the reasons that follow, we hereby affirm the trial court’s judgment that awarded sole custody of C.E.K. to Ms. Kaptein, but reverse that part of the judgment regarding the suspension of FaceTime visitation with Mr. Kaptein.
FACTS AND PROCEDURAL HISTORY
The parties’ daughter, C.E.K., was born on February 25, 2013. On April 30, 2014, Ms. Kaptein filed a petition for divorce and requested sole custody of C.E.K. After a hearing, on May 19, 2015, the trial court awarded Ms. Kaptein interim sole custody, while Mr. Kaptein was awarded interim supervised visitation with C.E.K. each month from the first Saturday until the second Sunday for a minimum time period of two (2) hours to a maximum of eight (8) hours each day, and FaceTime | ¿visits. Mr. Kaptein was also ordered to pay Ms. Kap-tein interim spousal support of $15,000 per month and child support of $5,000 per *233 month. In her reasons for judgment, the judge stated as follows:
The Court finds Mr. Kaptein’s lifestyle and travel are not stable. Mr. Kaptein admitted to engaging in multiple extramarital affairs, with not one, but multiple women in several different countries. He also admitted to paying the travel expenses for such women, so he could not only have sex with them, but have unprotected sex with them, thereby jeopardizing his health, and that of his wife, Mrs. Kaptein. Mr. Kaptein’s testimony and admitted indiscretions demonstrate a reckless disregard for his personal safety, which calls into question the safety of the minor child. Adultery alone does not demonstrate a lack of moral fitness on behalf of Mr. Kaptein, but his precarious nature, including the frequency, location, and disregard for safety—exhibited by unprotected sex with women in different countries— does. Mr. Kaptein does not have a stable home, he does not live or work in the United States, nor will he be in this country for an extended period of time. Although Mr. Kaptein’s accomplishments as a businessman are commendable, his choices to pursue a career and a scandalous lifestyle away from his family, weigh against him. Therefore, this Court finds it in the best interest of the minor child to award interim sole custody to Mrs. Kaptein.
On November 9,2015, Mr. and Ms. Kap-tein stipulated that the retroactive amount of child support and interim spousal support arrears was $41,500.00. At that time, the trial court ordered Mr. Kaptein to pay one-half of the arrearage ($20,750.00) by November 80, 2015, and the remaining one-half by January 15, 2016.
On December 7, 2015, Ms. Kaptein filed a rule for contempt alleging that Mr. Kap-tein had (1) failed to make the December 5, 2015 child support and interim spousal support payments, (2) failed to pay the $20,750.00 arrearage payment that was due on November 30, 2015, and (3) paid only $1,750.00 on December 6,2015.
IsOn January 15, 2016, Ms. Kaptein filed an amended and supplemental rule for contempt alleging that Mr. Kaptein (1) failed to make the January 5, 2016 child support and interim spousal support payments, (2) paid only $1,750.00 on January 6, 2016, (3) failed to pay the $20,750.00 arrearage payment due on January 15, 2016, and (4) failed to produce financial documents as ordered on multiple occasions by the trial court. Ms. Kaptein also alleged that Mr. Kaptein had not visited with C.E.K. since September 2015.
After a hearing held on January 26,2016 on Ms. Kaptein’s contempt rule and amended contempt rule, the trial court signed a written judgment on February 4, 2016, that (1) granted Ms. Kaptein’s rule for contempt and found that as of the date of the hearing, Mr. Kaptein owed $78,000.00 in past due support, (2) ordered Mr. Kaptein to pay $2,225.50 in attorney’s fees and $47.00 in court costs, (3) ordered Mr. Kaptein to pay $25,000.00 -within 30 days from date of the hearing or otherwise spend 30 days in Orleans Parish Prison for his failure to abide by the judgments of May 19, 2015, and October 29, 2015, and (4) suspended Mr. Kaptein’s- rights to visitation through FaceTime pending further orders from the trial court. At that time, the trial court set the final custody hearing on July 1, 2016.
On March 7, 2016, attorney Cindy H. Williams filed a notice of limited appearance on behalf of Mr. Kaptein seeking to appear only as appellate counsel for him in his appeal of the February 4, 2016 judg *234 ment. [2]
On May 9, 2016, Ms. Kaptein filed a trial subpoena requesting the court-appointed mental -health evaluator’s, Dr. Daliah Bauer,- appearance at the custody I ¿hearing set on July 1, 2016. On May 17, 2016, Ms. Kaptein served Mr. Kaptein through Mr. Brett Bonin, who was appointed by the trial court on January 26,2016 as agent for service of process, with a notice of perpetuation deposition notifying him of her intent to “take the perpetuation deposition of Dr, Daliah Bauer, Ph.D., on June 17, 2016.” On May 20,2016, Mr. Bonin emailed that notice to Mr. Kaptein and Ms. Williams, and no one objected.
On June 27, 2016, the trial court denied Mr. Kaptein’s (1) June 23, 2016 motion to continue the custody trial scheduled for July 1, 2016, and (2) motion to enroll Ms. Williams as his trial counsel. However,' on June 28, 2016, Ms. Williams was allowed to enroll as- trial counsel without a continuance.
The hearing on Ms, Kaptein’s motion for sole custody was tried on July 1, 2016, whereby the trial court granted Ms. Kap-tein sole custody, maintained its previous order suspending Mr. Kaptein’s FaceTime visitation, and held that “reasonable visitation with Mr. Kaptein is not. in the best interest of the child.”- In its reasons for judgment, the trial court stated:
In any determination of child custody, the paramount consideration is the best interest of the child. La. G.C. art. 131. If custody in one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent. La. C.C. art. 132. The court shall consider all relevant factors in determining’ the child’s best interest. La. C.C. art, 134. The list of factors provided by La. C.C. art. 134 is nonexclusive, and the determination of the weight to be given each factor is left to the discretion of the trial court. See Comment (B), La. C.C. art. 134. The Court finds Ms. Kaptein met her burden in showing by clear and convincing evidence that sole custody is in the best interest of the child.
(1) The love, affection, and other emotional ties between each party and the child.
|fiMs. Kaptein has. strong emotional ties with C.[E.]K. Contrarily, no evidence was presented to show that the child has strong ties to Mr. Kaptein, Mr. Kaptein has failed to demonstrate a willingness to be a part of C.[E.]K.’s life. Ms. Kaptein testified,, on cross-examination, that C’.[E.]K, has never asked the whereabouts of her father. This factor weighs strongly in favor of Ms. Kaptein.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
Mr. Kaptein has shown little interest in providing C.[E.]K. with love and guidance. He has not seen C.[E,]K, for over half of her life because he has resided in a different country, Mr. Kaptein has previously testified he is an atheist. Ms. Kaptein has been the sole caretaker of C.[E.]K. and testified she takes G.[E.]K. to church and preschool during the week. Ms. Kap-tein shows a genuine desire to see C.[E.]K. prosper academically and in extracurricular activities like swimming, dance, and music. No evidence, aside from Mr. Kaptein’s alleged desire to lift the FaceTime visitation *235 suspension, was presented to show Mr. Kaptein is interested in seeing or rearing his child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
Ms. Kaptein testified she is not currently employed. She testified her intention is to secure a job once this litigation has ended. The evidence shows that Mr. Kaptein is a successful businessman with the means to provide food and material needs for the child. Mr. Kaptein is under orders to pay support to Ms. Kaptein, and Mr. Kaptein has been held in contempt for his failure to follow those orders.
|fi(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
The best interest of the minor child is served by keeping the child in New Orleans, where the child has lived for the majority of her life.
(5)The permanence, as a family unit, of the existing or proposed custodial home or. homes. .
Ms. Kaptein testified she resides in the former matrimonial home and will be moving to'a smaller home in New Orleans in August. During the existence of the marriage, Mr. Kaptein traveled the world for business. Since the termination of the marriage, the evidence shows that Mr. Kaptein has continued making trips to various countries. His business and pleasure habits have been everything but permanent. To the contrary, Ms. Kaptein has established a permanent home with C,[E.]K. in .New Orleans, while providing stability for the minor child.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
Much of Ms. Kaptein’s testimony supported this faetor. The Court finds that Mr. Kaptein has a sexual obsession that adversely affects his ability and his fitness to raise C.[E.]K. Mr. Kaptein is more interested in traveling and engaging in lavish sex parties than he is in being a father. Ms. Kap-tein testified that during their marriage, Mr. Kaptein lied to her, had sex .with various women from different countries, and at this point she does not know him anymore. On cross-examination, Ms. Kaptein testified that C.[E.]K. is not aware of Mr. Kaptein’s sexual habits. Nevertheless, the Court .finds-that Mr..Kaptein’s lifestyle, his lack of credibility, his failure to comply .with court orders and failure to take interest in seeing his child during these formative years of her |7life, demonstrate that his moral fitness would be a detriment to the child.
(7) The mental and physical health of each party.
Aside from sc recent leg injury' sustained by Mr. Kaptein, which allegedly prevented him from traveling via air, no testimony was presented to put the mental or physical health of the parties at issue.
(8) The home, school, and community history of the child.
Last fall, C.[E.]K. enrolled in preschool at the Academy of Sacred Heart and she will continue attending Sacred Heart this coming fall. C.[E.]K. was raised uptown and is involved with swimming, music, and dance in the area. .
. (9) The reasonable .preference of the child, if the court deems the child to *236 be of sufficient age to express a preference.
The Court did not hear testimony from the child regarding her preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
Ms. Kaptein testified she does not think Mr. Kaptein is fit to co-parent C.[E.]K. because of his risqué lifestyle. She stated she would be willing to co-parent with Mr. Kaptein once he has completed the recommendations made by Dr. Bauer.
(11) The distance between the respective residences of the parties.
To this date, the Court is unclear exactly where Mr. Kaptein resides. The Court cannot definitively analyze the distance between Ms. Kaptein’s New Orleans home and Mr. Kaptein’s residence because Mr. Kaptein has never provided the Court with a valid address, despite being ordered to do so.
|s(12) The responsibility for the care and rearing of the child previously exercised by each party.
Ms. Kaptein has taken responsibility for 100% of the care and rearing of the minor child. Mr. Kaptein has not visited with C.[E.]K. since September of 2015.
Pursuant to La. C.C. art. 136, a parent not granted custody or joint custody of a child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would not be in the best interest of the child. La. C.C. art. 136. The Court finds that due to Mr. Kaptein’s failure to comply with visitation, his promiscuous lifestyle, and his departure from the child’s life, reasonable visitation does not serve the best interest of the minor child.
As it relates to the partition of the community, Ms. Kaptein failed to comply with R.S.9:2801, the mandatory article for dividing community assets and liabilities. On March 1 [ 5, 2016, the Court signed the order page—attached to Ms. Kaptein’s Petition for Partition of Community Property—which quotes the language of La. R.S. 9:2801 and orders that both parties are ordered to traverse or concur in the descriptive list filed by the other party within sixty days of the last detailed descriptive list. The record shows that Ms. Kaptein filed her last detailed descriptive list on June 9, 2016. According to La. R.S. 9:2801 and the March 15, 2016 order signed by this Court, Mr. Kaptein has sixty days from June 9th to traverse Ms. Kap-tein’s last filed detailed descriptive list. The Court does not want to delay this matter, but more importantly it does not want to prejudice Mr. Kap-tein’s rights in his property. To partition the community at this posture would be premature.
Mr. Kaptein now appeals this final judgment, assigning the following assignments of error: (1) the trial court erred in awarding sole custody to Ms. Kaptein; (2) the trial court erred in ruling that reasonable visitation with him is not in the best interest of C.E.K., and in continuing the suspension of FaceTime visitation with C.E.K.; and (3) the trial court erred in allowing the introduction of Dr. Bauer’s deposition into th'e record because Dr. Bauer was not available at the hearing and his deposition was not properly perpetuated according to La. C.C.P. art. 1429.
*237 DISCUSSION
The trial court shall award custody in accordance with the best interest of the child. La. C.C. art. 131. In determining the best interest of the child, “[e]aeh case must be viewed in light of the child’s age, the situation of the parents, and any other factor relevant to the particular case.” Palazzolo v. Mire, 08-0075, p. 35 (La. App. 4 Cir. 1/7/09), 10 So.3d 748, 768 citing White v. Kimrey, 37,408, p. 7 (La. App. 2 Cir. 5/14/03), 847 So.2d 157, 161. If the parents come to an agreement on who is to have custody, then the trial court must award custody in accordance with that agreement unless the best interest of the child requires a different award. La. C.C. art. 132. If there is no agreement, or if the agreement is not in the best interest of the child, then the trial court shall award joint custody unless custody in one parent is shown by clear and convincing evidence to be in the best interest of the child. La. C.C. art. 132. As stated by the Louisiana Supreme Court, “[i]t is the child’s emotional, physical, material and social well-being and health that are the court’s very purpose in child custody cases; the court must protect the child from the real -possibility that the parents are engaged in a bitter, vengeful, and highly emotional conflict.” Hodges v. Hodges, 15-0585, p. 3 (La. 11/23/15), 181 So.3d 700, 702. Further, because the trial judge is in the best position to ascertain the best interest of the child based on the particular circumstances of each case, a trial 11ncourt’s custody determination is entitled to great weight and will not be disturbed by an appellate court absent a clear abuse of discretion. Leard v. Schenker, 09-1438, pp. 2-3 (La. App. 4 Cir. 3/24/10), 35 So.3d 1152, 1154.
The first issue to address is whether the trial judge erred in awarding Ms. Kaptein sole custody of C.E.K. La. C.C. art. 134 enumerates the following twelve factors for the trial court to consider in determining the best interest of the child:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
These factors have been construed to be nonexclusive, and the trial court has the discretion to determine the relative amount of weight to be given each factor. The court is not required to analyze mechanically all of the dozen factors; rather, *238 Inthe court should balance- and weigh the factors in view of the evidence presented. Palazzolo, 08-0075 at pp. 34-37, 10 So.3d at 768-70.
In this case, the trial court determined from-clear and convincing evidence that the best interest of C.E.K., now 4 years old, was served by the award of sole custody to her mother. Although Mr. Kaptein alleges that there was no evidence presented at the custody trial that showed joint custody would be harmful to C.E.K, we find that the trial record reflects a reasonable factual basis for the trial judge’s award of sole custody to'Ms. Kaptein. Specifically, the record evidences the fact that Mr. Kaptein had not seen C.E.K. for ten months preceding the custody trial, has not paid the court ordered child support as previously ordered, has consistently failed to provide his contact information to the court, as well as his attorneys throughout the custody proceedings, and has failed to appear for the interim and final custody hearings. After a review of the record, we agree with the trial court that Mr. Kaptein failed to demonstrate a willingness to be a part of C.E.K’s life when he lives in a different country and thus was not able to see C.E.K. for over half of her life. Under the particular facts of this case, we find no legal error in the trial court’s determination that sole custody with Ms. Kaptein is in thfe best interest of C.E.K.
The second issue to address is whether the trial court erred in ruling that reasonable visitation with Mr. Kaptein is not in the best interest of C.E.K., and continued the suspension of FaceTime visitation with C.E.K. Mr. Kaptein argues on appeal that the trial court suspended his FaceTime visitation on February 4, 2016, as a punitive measure after finding him in contempt of court for not paying, in full, the court’s orders relating to child support and interim spousal support. Mr. Kaptein alleges in his appellate brief that the trial court’s July 1, 2016 judgment h ¿‘seems -more [of] a punishment for his sex life and his inability to pay $20,000 per month than an appropriate ruling based on the best interests, of the child—because no matter how bad a husband Mr. Kaptein [he] was, it simply cannot be said that the child’s interests are best served by cutting her off completely from her father.” Conversely, Ms. Kaptein • argues that it is not in C.E.K.’s best interest to have a digital relationship with Mr. Kaptein and that the trial court properly suspended the Face-Time visitation.
La. C.C. art 136 provides that “[a] parent not granted- custody or joint custody of a child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would not be in the best interest of the child.” As with custody, the paramount criterion for determining a noncustodial parent’s right to visitation is the best interest of the child. Louisiana courts have consistently held that denial of visitation rights to a parent is an extreme measure warranted only by “conclMsive evidence that visitation would seriously endanger the child’s physical, mental, moral, or emotional health.” Hilkirk v. Johnson, 15-0577, p.43 (La. App. 4 Cir. 12/23/15), 183 So.3d 731, 755, citing Palazzolo, 08-0075, p. 52, 10 So.3d at 778; Becnel v. Becnel, 98-593, p. 5 (La. App. 5 Cir. 3/25/99), 732 So.2d 589, 592. (Emphasis added) Further, the question of visitation is always open to change when the conditions warrant it. Becnel, 98-593 at p.6, 732 So.2d at 592-93, citing Reynier v. Reynier, 545 So.2d 663, 664 (La. App. 5th Cir. 1989). When there have been restrictions placed on a noncustodial parent’s visitation rights, those restrictions should be lifted when it is shown to be in the child’s best interest. Id.
*239 In this case, the record evidences the fact that Mr, Kaptein and C.E.K. were enjoying their FaceTime visitation up until the February 4, 2016 order, which 11Rsuspended Mr. Kaptein’s rights to such visitation after finding him in contempt of court. Although Ms. Kaptein testified that it was not in C.E.K’s best interest to have a solely digital relationship with' Mr. Kap-tein, she nonetheless testified that C.E.K. was unaware of Mr. Kaptein’s sexual behavior and/or relationships, and that she had no complaints concerning previous FaceTime visits with Mr. Kaptein or his behavior during those visits with C.E.K. The record is void of any conclusive evidence that FaceTime visitation with Mr. Kaptein poses any risk to C.E.K. or that’it is detrimental to the child. In fact, Dr. Bauer stated in his December 15, 2015 custody evaluation that C.E.K. "should continue to have the opportunity to communicate with her father through Face-time or Skype on a regular basis” and that as C.E.K. “gets older and becomes more cognizant and aware of the process, the time can be extended and she can become more independent in conversations with her father and his family.”' For these reasons, we reverse the trial court’s ruling, which continued the suspension of Face-Time visitation, as well as its finding that reasonable visitation is not- in the best interest of the child, and we hereby reinstate Mr. Kaptein’s rights to .FaceTime visitation with C.E.K. as previously. ordered.
The third issue to address is whether the trial court erred in allowing Dr. Bauer’s deposition into the record on July 1, 2016. Mr. Kaptein argues that Dr. Bauer’s vacation does not make her unavailable for purposes of creating an exception to the hearsay rule under La. C.E. 804.[3] However; Ms. Kaptein argues | uthat Mr. Kaptein only objected to Dr. Bauer’s deposition under La. C.C.P. art. 1429, and that he cannot now assert on appeal a different ground for his objection. Ms. Kaptein also argues that Mr. Kaptein and his counsel received the notice of perpetuation deposition notifying them of her intent to “take the perpetuation deposition of Dr. Daliah Bauer, Ph.D., on June 17, 2016,” and that neither of them timely objected to the use of Dr. Bauer’s deposition at trial. Thus, Ms. Kaptein argues that the trial court did not abuse its discretion and correctly admitted the perpetuation deposition of the expert, Dr. Bauer. We agree.
The record indicates that Mr. Kaptein did in fact base his objection to the introduction of Dr. Bauer’s deposition on La. C.C.P. art. 1429, which governs the perpetuation of testimony. La. C.C.P. art. 1450 *240 governs the admissibility of depositions when a witness is unavailable, and states as follows:
A. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the Louisiana Code of Evidence applied as though the witnesses were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:
JjS***
(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:
(a) That the witness is unavailable;
(b) That the witness resides at a distance greater than one hundred miles from the place of trial or hearing or is out of the state, unless it appears that the absence of the witness was procured by the party offering the deposition; or
(c) Upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.
* * *
(5) However, any party may use the deposition of an expert witness for any purpose upon notice to all counsel of record, any one of whom shall have the right within ten days to object to the deposition, thereby requiring the live testimony of an expert. The objecting counsel of record shall pay in advance the fee, reasonable expenses, and actual costs of such expert witness associated with such live testimony... .However, the court may permit the use of the expert’s deposition, notwithstanding the objection of counsel to the use of that deposition, if the court finds that, under the circumstances, justice so requires.
Moreover, “it is well established that the trial court has much discretion in determining whether to allow the use of deposition testimony at trial, and its decision will not be disturbed upon review in the absence of an abuse of that discretion.” Boutte v. ABC Ins. Companies, 00-0649, p. 8 (La. App. 4 Cir. 2/6/02), 811 So.2d 30, 35.
Our review of the record reveals no abuse of discretion in the trial court’s ruling to allow the introduction of Dr. Bauer’s deposition as Mr. Kaptein, and his counsel, received notice of the perpetuation deposition, they could have attended | lfithe perpetuation deposition to cross-examine Dr. Bauer, and/or they could have timely objected to the use of her deposition. Furthermore, assuming arguendo that the trial court erred in allowing the introduction of Dr. Bauer’s deposition, we find that it was harmless error as there has been no showing that Mr. Kaptein was prejudiced by the inclusion of this evidence.
We also find no merit in Mr. Kaptein’s argument that Dr. Bauer’s deposition was not properly perpetuated for trial under La. C.C.P. art. 1429. As stated in Gaines v. Bruscato, “[a] petition for pre-litigation preservation of testimony under La. C.C.P. art. 1429 is an extraordinary discovery method to be used where resort to normal discovery is made impossible by the absence of pending litigation,” 30,340 (La. App. 2 Cir. 4/8/98), 712 So.2d 552, 556, citing Marine Shale Processors Inc. v. State, Through Department of Health and Hospitals, 572 So.2d 280 (La. App. 1st Cir. 1990). Because La. C.C.P. art 1429 applies to pre-litigation preservation of testimony, *241 we do not find it applicable to this case where litigation was ongoing.
For these reasons, we hereby reverse that part of the judgment suspending Face Time visitation and affirm the trial court in all other respects.
AFFIRMED IN PART; REVERSED IN PART

. In this opinion, the initials, rather than the full name, of the minor child are used to protect and maintain the privacy of the minor child involved in this proceeding. See Uniform Rules, Courts of Appeal, Rule 5-1 and Rule 5-2.

. Although Mr. Kaptein filed an appeal from the January 26, 2016 ruling, this Court dismissed the appeal on January 6, 2017, finding that the order was interlocutory.

. La. C.E art. 804 addresses hearsay exceptions when the declarant is unavailable, and states as follows, in pertinent part:
A. Definition of unavailability. Except as otherwise provided by this Code, a declarant is "unavailable as a witness” when the declar-ant cannot or will not appear in court and testify to the substance of his statement made outside of court. This includes situations in which the declarant:
(1) Is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement;
(2) Persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so;
(3) Testifies to a lack of memory of the subject matter of his statement;
(4) Is unable to be present or to testify at the hearing because of death or then existing physical or mental illness, infirmity, or other sufficient cause; or
(5) Is absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means. A declarant is not unavailable as a witness if his exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrong-doing of the proponent of his statement for the purpose of preventing the witness from attending- or testifying. -