772 So.2d 793 (2000)
NEWTON AND ASSOCIATES, INC.
v.
Margaret BOSS.
No. 00-CA-889.
Court of Appeal of Louisiana, Fifth Circuit.
October 18, 2000.
Writ Denied January 12, 2001.
*794 Grant & Barrow, Ernest E. Barrow, II, Gretna, Louisiana, Attorney for Appellant Margaret Boss.
W. Paul Andersson, Andrea D. Guilland, Leake, Andersson & Mann, New Orleans, Louisiana, Attorneys for Appellee Newton and Associates.
Panel composed of Judges EDWARD A. DUFRESNE, JAMES L. CANNELLA and SUSAN M. CHEHARDY.
CANNELLA, Judge.
Defendant, Margaret Boss (Boss), appeals from the trial court judgment rendered in favor of Plaintiff, Newton and Associates, Inc. (Newton), granting Newton's request for an injunction. For the reasons which follow, we affirm.
According to the pleadings, on March 1, 1999, Newton, a collection agency, and Boss entered into an employment relationship. They signed an employment agreement which, among other provisions, contained a non-competition clause. That clause provided, in pertinent part:
Employee covenants and agrees that during the term of his employment and for a two (2) year period following the termination thereof for any reason whatsoever employee will not, directly or indirectly, in association or in combination with any other person or entity, as an officer or shareholder of a corporation, or as an employee agent, independent contractor, consultant, advisor, joint venturer, partner or otherwise, whether or not for pecuniary benefit: engage in the same or substantially similar business in which Newton and Associates is engaged as of the effective date of the termination....
Boss held a position with Newton as a sales account executive. As such, she solicited clients on behalf of Newton and maintained clients of Newton. Boss ended her employment relationship with Newton on July 21, 1999. Shortly thereafter, Boss began working for Alexander & Hamilton, Inc., also a collection agency, in a position similar to that which she held at Newton.
On September 13, 1999, Newton filed suit against Boss, seeking a temporary restraining order (TRO) and a preliminary and permanent injunction to prohibit Boss from violating the non-competition clause of their employment agreement. Newton also sought damages from Boss for breach of the agreement and for violation of the Unfair Trade Practices Act, including penalties and attorney fees.
The record indicates that the first TRO was issued on September 13, 1999, requiring Newton to post a $1000 bond. A second TRO was issued on September 22, 1999. A hearing was scheduled for September 30, 1999, but the process server was unable to timely serve Boss, so the hearing was not held and the TRO expired on October 2, 1999. Then, on October 13, 1999, Boss filed a motion to dissolve the TRO. On October 20, 1999, Newton filed a supplemental motion to have the TRO reissued. The trial court signed another TRO setting a hearing for October 28, 1999. Boss moved for a continuance of the hearing and agreed to an extension of the TRO. The hearing on Boss's motion to dissolve the TRO and Newton's request for an injunction was set for November 9, 1999. Due to its own conflict, the trial court continued the hearing until November 18, 1999. The hearing was again continued until December 15, 1999.
*795 On December 15, 1999, the matter was tried. The trial court heard arguments from counsel and accepted certain factual stipulations. Thereafter, with the agreement of counsel, the trial court determined that witness testimony would be reserved until the trial on the merits, because there was enough evidence before the trial court to justify issuance of the injunction.[1] It is from this judgment that Boss appeals.
On appeal, Boss assigns three errors.
First, Boss argues that the non-competition agreement is invalid on its face and that the trial court erred in not declaring the agreement invalid and instead issuing the injunction. Boss argues that the agreement applies to a period of time in excess of that permitted by law.
Newton argues that Boss' interpretation of the clause is strained and the non-competition clause is within the bounds of the law. We agree.
La. R.S. 23:921, on contracts against engaging in competing businesses, provides in pertinent part:
Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.
The agreement between the parties, as quoted more fully above, provided that Boss would not engage in a competing business with her employer "during the term of [her] employment and for a two (2) year period following the termination thereof...."
Boss argues that the statute limits the non-competition period to a maximum of two years including the time in which she was employed. Newton argues that the statutory limit only applies to the period following the termination of employment. We find Newton's interpretation of the statute more accurate.
Reading the statute in its entirety, we find that the statute was intended to apply to the time period following the termination of a relationship. Subsection (B) of the statute, pertaining to the sale of corporations, limits non-competition agreements to a period "not to exceed a period of two years from the date of sale." The second part of subsection (C), applicable to this case, limits non-competition provisions for independent contractors to "a period not to exceed two years from the date of the last work performed under the written contract." Subsection (D) addresses non-competition agreements in partnerships and provides that they are "not to exceed a period of two years from the date of dissolution." Subsection (E) relates to franchise agreements and limits the non-competition provisions in those agreements to "a period not to exceed two years following severance of the franchise relationship." And, finally, Subsection (F) relating to the computer software industry limits non-competition agreements to "a period not to exceed two years from the date of the termination of employment."
In all instances addressed by the statute, the statutory limit for the non-competition agreement refers to a time period that commences at the termination of the relationship. Similarly, in this *796 case, concerning employment agreements, we find that the time limit set out in the statute refers to a two year period following termination of employment and does not include time prior to the termination. If the statute were intended, as Boss argues, to limit non-competition to a total of two years whether during employment or following the termination of the employment, it would have simply stopped with the phrase "not to exceed a two year period," without adding "from termination of employment." The addition of that phrase was for a purpose, to specify that the two year period commenced after termination of employment.
Thus, in line with this interpretation, we find no error in the trial court ruling that the time period specified in the agreement between these parties did not violate the law and was valid and enforceable.
Boss' second assignment of error states that "the Court erred in issuing its temporary restraining order and subsequently its injunction without a hearing or determination of facts." In support of her argument on this assignment of error, Boss contends that the request for the TRO was not in proper form, not properly continued and not specific enough.
Newton points out, in opposition to these arguments, that issues relating to a TRO are not appealable, citing La. C.C.P. art. 3612.
Indeed, La. C.C.P. art. 3612 expressly states that "There shall be no appeal from an order relating to a temporary restraining order." A party may seek review of a TRO by way of an application for supervisory writs to the Court of Appeal. If damages are sought for the wrongful issuance of a TRO, the aggrieved party may assert such a claim with a motion to dissolve the TRO or by reconventional demand to the underlying claim. La. C.C.P. art. 3608. Additionally, based on the posture of this case, the TRO has long since lapsed and was replaced by the issuance of the judgment enjoining Boss from competing with Newton for a two year period. Thus, any issues regarding the propriety of the TRO, other than a request for damages for the wrongful issuance of the TRO, are moot. Since the trial court did not rule on Boss' demand for damages for the wrongful issuance of the TRO and stated that witnesses would be reserved for the trial on the merits, we find that the issue of damages remains open for consideration following trial on the merits.
Boss' assignment of error also refers to the wrongful issuance of the injunction without a hearing, but there are no arguments presented in brief in support of that assigned error. Moreover, we found no objection in the record to the trial court's statement that it would decide the injunction question based on the arguments of counsel and the stipulations and that witnesses would be reserved for trial on the merits. Accordingly, we find no merit in this assignment of error.
Finally, Boss argues in her third assignment of error that the trial court erred in failing to require sufficient bond to be posted. However, other than referring to Boss' economic loss because of her employment limitations under the injunction, Boss has made no argument of risk or prejudice concerning the amount of the bond. In fact, Boss does not even provide the amount of the bond in the argument. Rather, this assignment of error seems to present an argument regarding Boss' entitlement to damages and attorney fees for the wrongful issuance of the TRO. Therefore, we find no merit in this assignment of error.
Accordingly, for the reasons stated above, we affirm the judgment of the trial court preventing Boss from engaging in the same or substantially similar business in which she was engaged with Newton, for a period of two years from the termination of her employment with Newton. The matter is remanded for further proceedings. *797 Costs of appeal are assessed against Boss.
AFFIRMED.
NOTES
[1] It should be noted that the judgment itself does not make reference to either a preliminary or a permanent injunction, but rather it prohibits Boss from engaging in competitive employment for a period of two years. In the transcript of the hearing the trial court refers to the issuance of a "preliminary permanent injunction" In Boss' motion for appeal, Boss indicated that the injunction was permanent and the trial court signed the motion. Our review indicates that the judgment rendered was for a permanent injunction rather than preliminary and we will treat it as such.