| .CANNELLA, Judge.
Plaintiff, Fred Harper, appeals from the trial court judgment rendered in favor of Defendant, Cheryl Harper, denying his motion to dissolve the temporary restraining order (TRO) and award attorney fees and costs and granting her modification of his visitation rights with the minor chil *1277 dren. For the reasons which follow, we reverse and remand.
The parties were married on October 1, 1980. Three children were born of the marriage. The parties were divorced on July 27, 1999. On December 29, 1999 the parties entered into a consent judgment setting joint custody of the three minor children and designating Cheryl Harper as the domiciliary parent. Fred Harper was granted “reasonable, liberal and flexible visitation rights with said minor children.”
On May 19, 2000, Cheryl Harper, through counsel, filed a Petition for Temporary Restraining Order, Preliminary and Permanent Injunction and Motion for Modification of Visitation seeking to prevent and restrict Fred Harper from |3exercising overnight visitation with his children “while a person of the opposite sex to whom said defendant is not married resides or is present overnight in the residence or structure where the visitation will occur.” Among other assertions in the petition, it provided that “Petitioner avers that it is not in the best interest of the young and impressionable minor children referred to above that a parent sleep with a person to whom he is not married with the knowledge of and in the constructive presence of the minor children.” Cheryl Harper further asserted in her petition that such a visit was planned for the weekend commencing May 19, 2000, the same day as the filing. Thus, she argued that there was not time for service of notice and a hearing, making immediate issuance of the TRO imperative. Cheryl Harper also requested that a show cause order issue for a hearing on a preliminary and permanent injunction and modification of the visitation order.
The trial court signed the TRO on the same day the petition was filed, enjoining Fred Harper from exercising visitation with his children on an overnight basis while a person of the opposite sex to whom he was not married was present. A hearing was set for June 6, 2000, more than ten days from the signing of the TRO, ordering Fred Harper to show cause why the preliminary and permanent injunction should not issue and the visitation judgment should not be modified with Cheryl Harper’s requested restriction. The hour of issuance was not endorsed on the TRO.
On May 25, 2000, Fred Harper filed a Motion to Dissolve Temporary Restraining Order in which he also prayed for attorneys fees and costs. A hearing on his motion was also set for June 6, 2000.
1¿Following the hearing and argument on June 6, 2000, the trial court denied Fred Harper’s Motion to Dissolve the Temporary Restraining Order and his request for attorney’s fees and costs. The injunction was issued restraining and prohibiting “both parties to this proceeding from exercising overnight custody and/or visitation with the minor children born of their marriage while under the same roof, or in the same home with a person of the opposite sex to whom the parent in question is not related either by marriage or by blood.” Further, it was ordered that the custody and visitation agreement be modified to include the restriction set forth in the injunction. It is from this judgment that Fred Harper appeals.
On appeal, Fred Harper first argues that the trial court erred in issuing the TRO and in denying his motion to dissolve it because it was not issued in compliance with law in numerous respects. First, the petition failed to assert and establish irreparable harm as required by La. C.C.P. art. 3603(A)(1). Second, there was no certification by counsel for Cheryl Harper, as required by law, regarding the efforts he made to give the opposing party or his counsel of record notice of his intent to seek the TRO. The certificate of service is not the equivalent of the notice requirement of La. C.C.P. art. 3603(A)(2). Third, the TRO was not endorsed with the hour of issuance as required by La. C.C.P. art. 3604(A). Fourth, the TRO did not state why it was granted without notice and hearing as required by La. C.C.P. art. *1278 3604(A). Fifth, the TRO did not expire within 10 days as required by La. C.C.P. art. 3604(A). Sixth, the TRO was issued ■without bond contrary to La. C.C.P. art. 3610. Seventh, the hearing for the injunction was set more than days after service of the notice of the hearing contrary to La. C.C.P. art. 3602. Following the hearing, it was also established | Kthat Cheryl Harper had no reasonable grounds for believing the factual assertions that she made in the petition, that Fred Harper was bringing a person of the opposite sex on his weekend trip to Gulf Shores on May 19th or that Fred Harper would “sleep with a person to whom he is not married with the knowledge of and in the constructive presence of the minor children.” Thus, Fred Harper argues herein that, because of these multiple violations, the lower court erred in refusing to dissolve the TRO.
While we are completely sympathetic with Fred Harper’s arguments herein concerning the issuance of the TRO contrary to law in numerous respects, La. C.C.P. art. 3612 provides that “[t]here shall be no appeal from an order relating to a temporary restraining order.” A party may seek review of a TRO by way of an application for supervisory writs to the Court of Appeal. Newton Associates, Inc., v. Boss, 00-889 (La.App. 6th Cir. 10/18/00), 772 So.2d 793. Additionally, based on the posture of this case, the TRO has long since lapsed and was rendered moot by the issuance of the injunction and modification of the custody and visitation order. Thus, any issues regarding the propriety of the TRO, other than the request for attorney’s fees and costs, are moot.
The primary issue presented in this appeal is whether the trial court erred in modifying the custody and visitation agreement by placing a restriction in that agreement prohibiting either party from exercising overnight custody or visitation with the minor children while a person of the opposite sex, not married to or related by blood to the parent exercising custody, is in the residence. While the judgement speaks of both an injunction and a modification of the custody agreement based on the same prohibition and conditions, we find that the trial |ficourt ruling is one on custody and visitation and we will review it under those standards.
A parent who is not the primary custodian of the minor child or children of the former marriage is entitled to reasonable visitation rights unless the court finds, after a hearing, that such visitation would not be in the best interest of the child. Becnel v. Becnel, 98-593 (La.App. 5th Cir.3/25/99), 732 So.2d 589, writ denied, 99-1165 (La.6/4/99), 744 So.2d 630; La. C.C. art. 136(A). The law recognizes the non-eustodial parent’s entitlement to reasonable visitation unless it is shown that it would seriously endanger the child’s mental, moral or emotional health. Becnel v. Becnel, supra. The rights of any parent, however, are always subservient to the best interests of the child. Becnel v. Becnel, supra; Maxwell v. LeBlanc, 434 So.2d 375, 377. The question of visitation is always open to change when the conditions warrant it when it is shown to be in the child’s best interest. Becnel v. Becnel, supra; Reynier v. Reynier, 545 So.2d 663 (La.App. 5th Cir.1989).
In this case, Cheryl Harper moved for a modification of the custody/visitation agreement requesting that a restriction be placed on the exercise of Fred Harper’s visitation. To succeed on that motion, it was incumbent upon Cheryl Harper to prove that the modification or restriction was in the best interest of the children. The trial court failed to make a “best interest” finding regarding the modification of the custody/visitation agreement. The omission of a specific best-interest finding with regard to modifying the visitation by restricting it was a legal error which nullifies the trial court’s judgment necessitating review de nova by the appellate court. Becnel v. Becnel, supra.
|7Based on our review of the record, we find nothing in this record to support a *1279 finding that Cheryl Harper met her burden of proving that the requested modification was in the best interest of these children. The only two witnesses to testify were Cheryl Harper and Fred Harper. Fred Harper testified unequivocally that he would never do anything detrimental to his children. He also testified unequivocally that he had no intentions of sleeping with nor would he sleep in the same room with a female to whom he was not married in the presence of or to the knowledge of his children. Further, he testified that although a woman has accompanied him during the day on outings with his children on three occasions, at no time in his children’s presence did he Mss the woman, put his arm around her, hold her hand or show her any physical affection in any way. He further testified that the children enjoyed the woman’s company and that they all got along very well. One of his sons gave the woman some flowers another chose to ride with her to the restaurant and his daughter rode piggy-back on her back during most of an afternoon trip to the Aquarium. He stated that with three children, it is helpful to have another adult around to assist in the care of the children.
Cheryl Harper did not contradict any of Fred Harper’s testimony. She admitted that Fred Harper told her that he would not sleep with any woman in the presence of the children. Her concern was not that the adults would sleep in the same room, but just that a female would be in the house, even in a separate room, overnight. She also admitted that the children have never complained about being in the presence of the woman during their time with their father. There was no evidence presented, medical, psychological or theological, that the presence of a female on an overnight visit, with whom the father did not sleep, would in any |sway be detrimental to the children. Rather, the only evidence in this record, to the effect that the visitation should be modified with the restriction that a female not related to Fred Harper by marriage or blood not be permitted in the residence during overnight custody of his children, was the testimony of Cheryl Harper that she simply thought it was best.
Under the requested restriction, as noted by Fred Harper, the consequences would be absurd. He could stay in adjoining hotel rooms, with a woman in one room and he in the other, but not in his three bedroom Gulf Shores home, despite the fact that each bedroom has a separate door that locks. Further, he could not take his children with him for a weekend in Gulf Shores and also invite friends vrith children to join them for the weekend if the “friends” include a married couple, and, thus, an unrelated female. He could not, for that matter, bring a female nanny or babysitter with him on an overnight trip. The excessiveness of the restriction needs no further elaboration.
A change in custody or visitation requires a showing that the modification is in the best interest of the child. There is nothing in this record that approaches such a showing. Therefore, we find that the trial court erred in imposing such a restriction on Fred Harper’s custody/visitation rights through modification of the agreement or by issuing an injunction and both are reversed and set aside. Since the denial of attorney fees and costs was based on the trial court’s mistaken judgment that the injunction should be granted and the modification ordered, that finding is also reversed and the case is remanded for the trial court to set appropriate attorney fees and costs.
Accordingly, for the reasons set forth above, the judgment of the trial court issuing an injunction and ordering modification of the custody visitation | ^agreement, “prohibiting the parties from exercising overnight custody and/or visitation with the minor children born of their marriage while under the same roof, or in the same home with a person of the opposite sex to whom the parent in question is not related either by marriage or by blood” and denying Fred Harper’s request for attorney *1280 fees and costs is reversed. The case is remanded for the trial court to set an appropriate award for attorney fees and costs.
REVERSED AND REMANDED.