CYCLE SPORT, LLC D/B/A CYCLE SHOP
v.
GARY JONES AND KAY JONES
No. 2009 CA 0654.
Court of Appeals of Louisiana, First Circuit.
October 23, 2009.
Not Designated for Publication
REGEL L. BISSO, Counsel for Plaintiff/Appellant Cycle Sport, LLC d/b/a Cycle Shop.
W. CHRISTOPHER BEARY, JOHN L. FONTENOT, DAVIDE A. ROSIGLIONI, Counsel for Defendants/Appellees Gary Jones and Kay Jones.
Before: WHIPPLE, HUGHES, and WELCH, JJ.
HUGHES, J.
This is an appeal from a summary judgment granted in favor of the defendants in a suit based on a non-competition agreement, upon the trial court's finding that the agreement exceeded the maximum term allowed by statute and was therefore null and void. For the reasons that follow, we vacate the summary judgment and remand for further proceedings.

FACTS AND PROCEDURAL HISTORY
In 2002, plaintiff, Cycle Sport LLC d/b/a Cycle Shop ("Cycle Shop"), along with Robert G. Miller, M.D. and Robert G. Miller, Jr., purchased a motorcycle dealership from J. Gary Jones Cycle Shack, Inc. d/b/a Cycle Shack ("Cycle Shack").[1] In connection with that sale, Cycle Shop entered into a contract with the sole shareholders of Cycle Shack, defendants, Gary Jones and Kay Jones, for consulting services, in exchange for a fee of $200,000.00 to each. Also included in the consulting agreement was a provision prohibiting Gary Jones and Kay Jones from owning, maintaining, operating, engaging in, or having any interest in any business similar to the Cycle Shop, in St. Tammany Parish during the term of the consulting agreement and for a two-year period following termination of the consulting agreement. The agreement further provided that in the event of a default by Gary Jones and Kay Jones, the consulting agreement would terminate and the Joneses would owe plaintiff damages, costs, expenses, attorney fees, and a refund of a percentage of the consulting fees. On July 9, 2004, plaintiff sent written notice of default to the Joneses stating that the Joneses had engaged in selling motorcycles on or about June 9, 2004, in St. Tammany Parish in contravention of the contract between the parties.
On September 1, 2004, Cycle Shop filed the instant lawsuit against Gary Jones and Kay Jones seeking: (1) a refund of a "percentage of the fees paid pursuant to Section II" of the consulting contract "said percentage being equal to the percentage of the term of [the] agreement remaining at the time of termination;" (2) reasonable attorney's fees; (3) legal interest; (4) costs; and (5) "[a] 11 additional and consequential damages as are reasonable in the premises." The Joneses filed an answer, denying the alleged default.
On June 27, 2005, Cycle Shop filed a motion for summary judgment, which asked for service on the defendants "[t]hrough their attorney of record," who was named as "David C. Vidrine, Esq." The Joneses filed no opposition to the motion for summary judgment and made no appearance at the August 11, 2005 hearing. Summary judgment was granted by the trial court and signed on August 18, 2005, ordering the defendants to pay Cycle Shop the amount of $46,785.23, along with litigation expenses in the amount of $5,205.00, costs, interest, and "all attorneys' fees, costs and expenses of collection."
On April 10, 2006, the Joneses filed a motion for new trial, alleging that at the time of service of Cycle Shop's motion for summary judgment, Glenn E. Diaz was their counsel of record, not David C. Vidrine. The Joneses contended that they made no opposition to the motion for summary judgment and did not appear at the hearing because neither they nor their attorney of record, Glenn E. Diaz, had notice of the motion. Nevertheless, the motion for new trial was denied and the defendants appealed, contending the trial court erred in failing to grant a new trial in this case in light of the improper service of the motion for summary judgment. On appeal, this court agreed and vacated the summary judgment. See Cycle Sport, LLC d/b/a Cycle Shop v. Jones, 2006-2402 (La. App. 1 Cir. 9/14/07) (unpublished).
Following remand to the trial court, the defendants filed a motion for summary judgment asserting the invalidity of the non-compete agreement as a matter of law. After a November 12, 2008 hearing, the trial court granted summary judgment in favor of the defendants, finding the agreement null and void on the basis that it exceeded the two-year maximum term of a noncompetition agreement authorized by LSA-R.S. 23:921. Cycle Shop now appeals, urging the following assignments of error: (1) the trial court erred in finding that there was a sale of a business; (2) the trial court erred in applying LSA-R.S. 23:921(B), rather than LSA-R.S. 23:921(C); (3) the trial court erred in finding that the temporal provisions of the agreement extend further than that permitted by LSA-R.S. 23:921; (4) the trial court erred in finding that the agreement's non-compete term was four years; and (5) the trial court erred in applying LSA-R.S. 23:921 "at all."

LAW AND ANALYSIS

Motion for Summary Judgment
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by LSA-C.C.P. art. 969; the procedure is favored and shall be construed to accomplish these ends. LSA-C.C.P. art. 966(A)(2). Summary judgment shall be rendered in favor of the mover if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
Appellate courts review summary judgments de novo under the same criteria that govern a district court's consideration of whether summary judgment is appropriate. Samaha v. Rau, XXXX-XXXX, pp. 3-4 (La. 2/26/08), 977 So.2d 880, 882; Allen v. State ex rel. Ernest N. Morial-New Orleans Exhibition Hall Authority, XXXX-XXXX, p. 5 (La. 4/9/03), 842 So.2d 373, 377; Boudreaux v. Vankerkhove, 2007-2555, p. 5 (La. App. 1 Cir. 8/11/08), 993 So.2d 725, 729-30.
In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor. Hines v. Garrett, XXXX-XXXX, p. 1 (La. 6/25/04), 876 So.2d 764, 765.
A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Id. at 765-66.
On motion for summary judgment, the burden of proof remains with the movant. However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. LSA-C.C.P. art. 966(C)(2).
When a motion for summary judgment is made and supported as provided in LSA-C.C.P. art. 967, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in LSA-C.C.P. art. 967, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. LSA-C.C.P. art. 967(B). See also Board of Supervisors of Louisiana State University v. Louisiana Agricultural Finance Authority, XXXX-XXXX, p. 9 (La. App. 1 Cir. 2/8/08), 984 So.2d 72, 79-80; Cressionnie v. Intrepid, Inc., XXXX-XXXX, p. 3 (La. App. 1 Cir. 5/14/04), 879 So.2d 736, 738.
Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Richard v. Hall, XXXX-XXXX, p. 5 (La. 4/23/04), 874 So.2d 131, 137; Dyes v. American National Property and Casualty Company, XXXX-XXXX, p. 4 (La. App. 1 Cir. 6/25/04), 886 So.2d 448, 451, writ denied, XXXX-XXXX (La. 10/29/04), 885 So.2d 592; Cressionnie v. Intrepid, Inc., XXXX-XXXX at p. 3, 879 So.2d at 738-39.

Louisiana's Limitation on Non-Competition Agreements
Louisiana's limitation on non-competition agreements is found in LSA-R.S. 23:921, which, at the time of the 2002 contracts entered into by the parties in this case, provided in pertinent part as follows:
§ 921. Restraint of business prohibited; restraint on forum prohibited; competing business; contracts against engaging in; provisions for
A. (1) Every contract or agreement, or provision thereof, by which anyone is restrained front exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void....
B. Any person, including a corporation and the individual shareholders of such corporation, who sells the goodwill of a business may agree with the buyer that the seller will refrain from carrying on or engaging in a business similar to the business being sold or from soliciting customers of the business being sold within a specified parish or parishes, or municipality or municipalities, or parts thereof, so long as the buyer, or any person deriving title to the goodwill from him, carries on a like business therein, not to exceed a period of two years from the date of sale.
C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment. An independent contractor, whose work is performed pursuant to a written contract, may enter into an agreement to refrain from carrying on or engaging in a business similar to the business of the person with whom the independent contractor has contracted, on the same basis as if the independent contractor were an employee, for a period not to exceed two years from the date of the last work performed under the written contract.

* * *
G. Any agreement covered by Subsections B, C, D, E, or F of this Section shall be considered an obligation not to do, and failure to perform may entitle the obligee to recover damages for the loss sustained and the profit of which he has been deprived. In addition, upon proof of the obligor's failure to perform, and without the necessity of proving irreparable injury, a court of competent jurisdiction shall order injunctive relief enforcing the terms of the agreement.
(Emphasis added.)
On appeal, Cycle Shop contends that the sale agreement between the parties did not include the "goodwill" of the motorcycle business, and therefore Paragraph (B) of LSA-R.S. 23:921 is not at issue in this case. Rather, Cycle Shop argues that the only portion of the contracts entered into by the parties that may be subject to the provisions of LSA-R.S. 23:921 is the consulting agreement, which is subject to Paragraph (C) of the statute. Thus, Cycle Shop asserts the trial court erred in applying Paragraph (B) of LSA-R.S. 23:921 to the facts of this case. We agree.
The first purchase agreement, signed by the parties on July 11, 2002, named the buyers as "Robert G. Miller, M.D. and Robert G. Miller, Jr.," and provided: "Seller is selling to Buyer and Buyer is buying from Seller the land, improvements and assets of the business known as Cycle Shack, located at 888 Old Spanish Trail in Slidell, Louisiana." This agreement did not state that the "goodwill" of the Cycle Shack business was being sold. In fact, the agreement specifically provided that the name "Cycle Shack" was not being sold, though it was agreed that the buyer could use the word "Cycle" in the name of its business. Thereafter, an amended agreement, signed on December 2, 2002, listed the buyers as "Robert G. Miller, M.D., Robert G. Miller, Jr.[,] Cycle Sport, LLC, a Louisiana Limited Liability Company represented herein by its manager/member, Robert G. Miller, Jr." The amended purchase agreement fixed prices for various items of movable property, including motorcycles, parts, and accessories, being sold, but likewise contained no provision conveying the "goodwill" of the business. The July 2002 purchase agreement did not mention a non-competition agreement between the parties; however, the December 2002 amended agreement stated, in pertinent part:
The purchase agreement is hereby amended to provide that J. Gary Jones and Kay Jones will be hired as independent contractor consultants to assist in the management and operation of the new dealership for a period of two years from the closing of the asset sale. The employment contract shall provide that during that two year period and for a two year period after the employment terminates, J. Gary Jones and Kay Jones and any business entity with which either or both are affliated shall not compete [with] Cycle Sport, LLC in St. Tammany Parish, Louisiana. The compensation paid to J. Gary Jones and Kay Jones is set at TWO HUNDRED THOUSAND DOLLARS, each.
A consulting agreement was signed by the parties on December 3, 2002, and provided, in pertinent part:
WHEREAS, J. Gary Jones Cycle Shack, Inc. ... has operated a motorcycle dealership in Louisiana doing business as the Cycle Shack for approximately thirty-five years; and
WHEREAS, the Cycle Shop is purchasing the assets of J. Gary Jones Cycle Shack, Inc.; and
WHEREAS, Consultants are the sole owners of all of the outstanding shares of stock of J. Gary Jones Cycle Shack, Inc.; and
WHEREAS, as a result of Consultants[`] long years of experience, the Cycle Shop desires to retain the services of Consultants with respect to continuing the operation of the dealership
NOW THEREFORE, the parties hereto agree as follows:
I. DURATION
Except as otherwise provided in this Agreement, the term of this Consultant Agreement shall expire on the second (2nd) anniversary of the date of execution hereof. Consultants [agree] and shall be obligated to provide consulting services and perform hereunder for the full term of this Agreement.
II. FEES
In consideration of the services provided to the Cycle Shop herein, the Cycle Shop shall pay to the Consultants a fee of TWO HUNDRED THOUSAND AND NO/100'S ($200,000.00) DOLLARS each, which Consultants acknowledge receipt.
* * *
IV. COVENANTS
A. Consultants specifically acknowledge that, pursuant to this Agreement, Consultants will receive valuable and confidential information, including without limitation, information regarding the operational, sales, promotional, and marketing methods and techniques of The Cycle Shop and the System. Consultants [covenant] that, during the term of this Agreement, except as otherwise approved in writing by The Cycle Shop, Consultants shall not, either directly or indirectly, or on behalf of, or in conjunction with, any person, persons, partnership, or corporation:
1. Divert or attempt to divert any business or customer of the Cycle Shop to any competitor by direct or indirect inducements or otherwise, or to do or perform, directly or indirectly, any other act injurious or prejudicial to the business operations and/or goodwill associated with The Cycle Shop;
2. Employ or seek to employ any person who is, at that time, employed by The Cycle Shop, or otherwise, directly or indirectly, induce such person to leave his or her employment therewith; or
3. Own, maintain, operate, engage in, or have an interest in any business similar to the Cycle Shop within the Parish of St. Tammany, State of Louisiana.
B. Consultants covenant that, except as otherwise approved in writing by the Cycle Shop, Consultants shall not, regardless, of the cause for termination, either directly or indirectly, for Consultants, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, limited liability company or other entity:
1. For two (2) years following termination, divert or attempt to divert any business or customer of the Cycle Shop to any competitor by direct or indirect inducements or otherwise, or to do or perform, directly or indirectly, any other act injurious or prejudicial to the business operations and/or goodwill associated with The Cycle Shop; or
2. For two (2) years following termination, employ or seek to employ any person who is, at the time, employed by The Cycle Shop, or otherwise, directly or indirectly, induce such person to leave his or her employment therewith; or
3. For two (2) years following termination, own, maintain, engage in, or have an interest in any business similar to the Cycle Shop which is located within the Parish of St. Tammany, State of Louisiana.
* * *
VII. INDEPENDENT CONTRACTOR AND INDEMNIFICATION
A. This Agreement does not constitute either Consultant to be an agent, legal representative, joint venturer, partner, employee or servant of The Cycle Shop for any purpose whatsoever. It is understood and agreed that Consultants shall be independent contractors and are in no way authorized to make any contract, agreement, warranty, or representation on behalf of The Cycle Shop. The parties further agree that this Agreement does not create a fiduciary relationship between them.
* * *
X. SEVERABILITY AND CONSTRUCTION
A. Except as expressly provided to the contrary herein, each paragraph, part, term, and/or provision of this Agreement shall be considered severable; and if, for any reason, any section, part, term, and/or provision herein is determined to be invalid and contrary to, or in conflict with, any existing or future law or regulation by a court or agency having valid jurisdiction, such shall not impair the operation, or have any other effect upon, such other portions, sections, parts, terms, and/or provisions of this Agreement as may remain otherwise intelligible, and the latter shall continue to be given full force and effect to bind the parties hereto; and said invalid portions, sections, parts, terms, and/or provisions shall be deemed not to be part of this Agreement.
We agree with Cycle Shop that the contractual provisions, along with the other evidence submitted on motion for summary judgment,[2] do not evidence an intent to convey the "goodwill" of the Cycle Shack business, but rather indicate that certain assets of the company were sold and its owners, who continued to run the Cycle Shack business at their Mississippi location, were hired as independent contractors to provide consulting services to Cycle Shop.
On the contrary, the Joneses argue to this court that the consulting agreement entered into by the parties was essentially part and parcel of the sale of the goodwill of the business and therefore subject to the provisions of Paragraph (B) of LSA-R.S. 23:921, asserting that "circumstances establish[] that Plaintiff purchased the probability that the patrons who frequented Cycle Shack prior to the sale would continue to frequent Cycle Shop after the sale."[3] (Original emphasis omitted.)
In support of this argument, the Joneses submitted an excerpt from the deposition of Robert G. Miller, Jr., in which he stated the following:
[Gary Jones] wanted a consulting agreement so he could save on taxes and I wanted a noncompete agreement so he wouldn't come in and raid my employees and set up another dealership or operate out of Slidell.
When asked what type of services the Joneses provided to Cycle Shop as a result of the consulting agreement, Mr. Miller replied, "Not a whole lot. I went up there and met with Gary on one occasion. He was less than helpful."[4]
Despite the Joneses' assertions, Gary Jones stated in his affidavit filed with the trial court that "[p]ursuant to the Consulting Agreement, I was to render services to Cycle Shop in connection with its operation of a motorcycle dealership in Slidell, Louisiana." Further, in Robert G. Miller, Jr.'s affidavit, he stated the following:
[O]n and before December 2, 2002, the Cycle Shack operated from two locations, one in Picayune, Mississippi and the other at 888 Old Spanish Trail, Slidell, Louisiana and also maintained a warehouse. . . . Cycle Shack's assets consisted of the land and improvements at the Mississippi and Louisiana locations and the warehouse, plus the inventory, parts, accessories and furnishings at each location, and the warehouse, plus the personal vehicles of Gary and Kay Jones[.] . . . [O]n December 2, 2002, the Cycle Shop purchased certain assets from the Slidell, Louisiana location of the Cycle Shack. . . . [T]he assets purchased from the Cycle Shack were considerably less than the one-half of the assets owned by the Cycle Shack at the time of the sale, consisting only of some of the inventory, furnishings, parts and accessories located at the Slidell location[.] . . . Cycle Shop did not purchase any of the land and improvements of Cycle Shack at either of the business locations or the warehouse, nor any inventory, parts, accessories and furnishings at the Picayune location or the warehouse, nor any personal vehicles of Gary and Kay Jones, and in particular, Cycle Shop did not purchase the goodwill of the Cycle Shack and in fact, the Cycle Shack has continued to operate continuously under the same name from before the sale through the present under the name Cycle Shack[.] . . . [F]ollowing the sale, Cycle Shack used mass media advertising to inform its customers of the sale and that all customers were requested to do business with the Cycle Shack.
In order to prevail on a motion for summary judgment, the movant, in this case the Joneses, are required by LSA-C.C.P. art. 966 to establish through pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. Herein, the Joneses have failed to show that the sales agreement at issue herein conveyed the "goodwill" of a business, triggering the application of LSA-R.S. 23:921(B).
In support of its position that the non-compete provision of the consulting agreement at issue herein is valid, Cycle Shop cites to this court the case of Newton and Associates, Inc. v. Boss, 2000-889 (La. App. 5 Cir. 10/18/00), 772 So.2d 793, writ denied, XXXX-XXXX (La. 1/12/01), 781 So.2d 559, as holding that a non-competition agreement covering a term of employment is not governed by LSA-R.S. 23:921, rather it is only a post-termination non-competition agreement that is subject to the limitations contained in LSA-R.S. 23:921. In Newton, the employment contract entered into contained a covenant that the employee would not compete with the business of his employer during the term of his employment and for two years after its termination. In deciding that the non-competition clause applicable during the term of employment was not subject to LSA-R.S. 23:921, the Fifth Circuit reasoned as follows:
Reading the statute in its entirety, we find that the statute was intended to apply to the time period following the termination of a relationship. Subsection (B) of the statute, pertaining to the sale of corporations, limits non-competition agreements to a period "not to exceed a period of two years from the date of sale." The second part of subsection (C), applicable to this case, limits non-competition provisions for independent contractors to "a period not to exceed two years from the date of the last work performed under the written contract." Subsection (D) addresses non-competition agreements in partnerships and provides that they are "not to exceed a period of two years from the date of dissolution." Subsection (E) relates to franchise agreements and limits the non-competition provisions in those agreements to "a period not to exceed two years following severance of the franchise relationship." And, finally, Subsection (F) relating to the computer software industry limits non-competition agreements to "a period not to exceed two years from the date of the termination of employment."
In all instances addressed by the statute, the statutory limit for the non-competition agreement refers to a time period that commences at the termination of the relationship. Similarly, in this case, concerning employment agreements, we find that the time limit set out in the statute refers to a two year period following termination of employment and does not include time prior to the termination. If the statute were intended, as Boss argues, to limit non-competition to a total of two years whether during employment or following the termination of the employment, it would have simply stopped with the phrase "not to exceed a two year period," without adding "from termination of employment." The addition of that phrase was for a purpose, to specify that the two year period commenced after termination of employment.
Thus, in line with this interpretation, we find no error in the trial court ruling that the time period specified in the agreement between these parties did not violate the law and was valid and enforceable.
Newton and Associates, Inc. v. Boss, 772 So.2d at 795-96 (emphasis added). We agree with this analysis.
The non-compete agreement in the instant case was plainly written in conjunction with an employment contract between Cycle Shop and the Joneses; the agreement did not allow competition during the two-year term of the contract (a matter that, as pointed out hereinabove, is not controlled by LSA-R.S. 23:921) or for a post-termination period of two years. This two-year post-termination non-competition agreement is in compliance with the provisions of LSA-R.S. 23:921(C). Therefore, the Joneses have failed to establish they are entitled to summary judgment invalidating the noncompete provision of their consulting agreement with the plaintiff herein.
Having decided the appeal on the basis stated herein, we find it unnecessary to address the remaining assignments of error.

CONCLUSION
For the reasons assigned, the summary judgment rendered by the trial court in favor of Gary Jones and Kay Jones is hereby vacated, and the matter is remanded for further proceedings in accordance with the foregoing opinion. All costs of this appeal are to be borne by Gary Jones and Kay Jones.
JUDGMENT VACATED; REMANDED TO TRIAL COURT.
NOTES
[1] Although Cycle Shop was purchasing Cycle Shack's business located at 888 Old Spanish Trail in Slidell, Louisiana, the name of the business, "Cycle Shack," was not sold, as evidenced by the following provision in the purchase agreement: "Seller is not selling and buyer agrees not to use the name `Cycle Shack.' More specifically, Buyer agrees not to use the word `Shack,' but may use the word `Cycle' in the name of the business."
[2] In addition to other evidence discussed herein, we note that the affidavit of Gary Jones is contained in the record, and states in pertinent part that: he currently owns the Cycle Shack, Inc. ("Cycle Shack") in Picayune, Mississippi; on June 9, 2004 a Cycle Shack employee (Terrell "Terry" Fox) requested permission to take two "unserviced" motorcycles to "Bike Night" at the Southside Cafe in Slidell, along with another Cycle Shack employee (William Bounds); the employees themselves bore the expense of the trip and were not reimbursed by him (Jones) or Cycle Shack; the bikes taken were not for sale and no supplies required for a sale were provided to these employees; the motorcycles were not serviced and had no fuel or charged batteries; he (Jones) is not authorized by the manufacturers to sell unserviced motorcycles; he (Jones) did not have a license to sell motorcycles in St. Tammany Parish; following Bike Night, the motorcycles were returned to Cycle Shack; he (Jones) never attempted to divert business or customers away from the Cycle Shop; he (Jones) has never attempted to employ or induce away any employee of Cycle Shop; he (Jones) has never committed any acts injurious to the Cycle Shop business; and he (Jones) has not owned, maintained, operated, engaged in, or had an interest in any business similar to the Cycle Shop in St. Tammany Parish. The affidavit of Terrell "Terry" Fox was also filed into the record and stated that: he was the sales manager at Cycle Shack in Picayune, Mississippi, from March of 2004 through January of 2005; Bike Night is an event that allows motorcycle enthusiasts to come together; it was his idea to go to Bike Night; he completed all the necessary paperwork regarding the space used during Bike Night; he paid the rental fee for the space used during Bike Night; he was not paid by Gary Jones to attend Bike Night; he was never reimbursed by Gary Jones for the expenses related to Bike Night; he asked William Bounds to go with him to Bike Night; they used William's personal vehicle to transport two motorcycles from the Cycle Shack showroom to display at Bike Night; these two motorcycles were not serviced; a motorcycle has to be serviced before it can be sold; he did not have a license to sell motorcycles in Louisiana on Bike Night; they did not bring any receipt forms, sales forms, order forms, credit applications, or anything else needed to make a sale; there were no discussions regarding financing, purchase price, or negotiations held with anyone during Bike Night; business cards that he distributed had his name on them; brochures on display were manufacturers' brochures; the two motorcycles were returned to the Cycle Shack; and he has never performed any injurious act with respect to the Cycle Shop business, nor sought to employ any Cycle Shop employees. In contrast to the statements made by Mr. Jones and Mr. Fox, the Cycle Shop introduced the depositions of William Bounds and Joseph Miciello. Mr. Bounds, who was at the time of his affidavit a Picayune, Mississippi police office, asserted that he was instructed by J. Gary Jones "to set-up and operate a sales tent at Southside Cafe ... in Slidell, Louisiana, in connection with Southside's `bike night' on June 9, 2004." Mr. Bounds further stated that two Cycle Shack motorcycles were set up in a tent in Southside's parking lot for purposes of the sales display, and that the tent had a sign on it with Cycle Shack's name and Picayune, Mississippi address. Mr. Bounds stated that on June 9, 2004 he and another Cycle Shack employee "passed out business cards and brochures and solicited sales." Mr. Miciello's affidavit stated that he attended the June 9, 2004 "bike night" and assisted Cycle Shack employees place motorcycles on display in a tent, which was equipped with a Cycle Shack sign. Mr. Miciello observed the two Cycle Shack "salesmen" pass out business cards and brochures and solicit sales during the event.
[3] On this point, the Joneses cite the case of Godwin v. Godwin, 533 So.2d 1009, 1010 (La. App. 1 Cir. 1988), writ denied, 537 So.2d 1165 (La. 1989), which they contend holds that "goodwill" is defined as "the probability that customers of an established business will continue to patronize the business." However, we do not find the Godwin case authoritative with respect to the issue before this court, as the ownership of the "goodwill" at issue in Godwin case was not in dispute (each spouse/litigant owned a part). Contrarily, in the case before this court, the argument turns on whether "goodwill" of a business was conveyed in a sale. Such a fact must be proven and not inferred. Nor do we find jurisprudence cited by the Joneses (Gold & Suckle, Inc. v. Suckle, 335 So.2d 713 (La. App. 2 Cir.), writ denied, 338 So.2d 700 (1976) and Marshall Brown Insurance Agency, Inc. v. Toledano, 292 So.2d 266, 268 (La. App. 4 Cir. 1974)) to be authoritative, as both cases were decided prior to significant amendments to LSA-R.S. 23:921.
[4] We do not find the fact that the Joneses purportedly breached their agreement to provide consulting services to Cycle Shop dispositive of the nature of the agreement between the parties in this case.